**SIGNED this 13 day of June, 2018.**



_____
**John T. Laney, III
United States Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 13** |
| **GWENDOLYN JOHNSON,** | ) | |
| | ) | **Case No. 17-40105-JTL** |
| Debtor. | ) | |
| | ) | |
| **RENTALACCESS, LLC,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | **Contested Matter** |
| | ) | |
| **GWENDOLYN JOHNSON,** | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION ON RENTALACCESS, LLC'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY

The matter before the Court arises from the Motion for Relief from the Automatic Stay (the "Motion") filed by RentalAccess, LLC (the "Movant"). On June 8, 2018, the Court heard oral arguments on the Motion. The primary issue in this case is whether the Court should

characterize the contract as a lease or a security interest. Before addressing this question, the Court must also address a two procedural issues.

Having carefully considered the parties' arguments and applicable law, the Court finds the parties entered into a lease agreement, which the Bankruptcy Code requires a debtor to timely reject or assume. Therefore, subject to the limitations set forth in the accompanying order, the Court GRANTS the Motion.

## FACTUAL FINDINGS

Prior to filing this case, the Debtor entered into an agreement regarding the use of a portable storage shed. At a location in Phenix City Alabama, the Debtor signed a document titled "Rental Purchase Agreement and Disclosure" dated December 5, 2016 (the "Agreement"). Although the Debtor believed she interacted with an agent of Premier Portable Buildings, the Agreement listed RentalAccess LLC as the lessor and owner of the building and directed the Debtor to remit payment to the Movant at a particular Post Office Box.[1] Since purchasing the shed, the Debtor has used it exclusively to store household items.

The Agreement described the transaction as lease throughout the document. In particularly relevant parts, it provided:

D. The term of this agreement is one month.

E. Renter may renew this agreement for consecutive terms of one month by making rental payments in advance for additional month Renter wishes to rent the property.

F. The Rental Payment $ 86.13 plus $7.61 sales tax, Total $95.84 per month and is due on the 5th day of each succeeding month…. If [the Debtor] renews this

---

[1] The Motion attaches two documents. One document itemizes the financing terms of the agreement. That document contained a header with Premier Portable Buildings' name and address. It also states that payments should be made to Premier Portable Buildings. Another more detailed document listed the Movant as the lessor and, in addition to listing financing terms, provided detailed terms for the agreement. Further, the document directed the Debtor to make payments to the Movant. At the hearing, neither party could explain why two documents were executed. The limited evidence presented on the matter, however, leads the Court to conclude that the Agreement with the Movant memorialized the parties' intent in entering the contract.

2

>agreement forty-eight (48) consecutive months, on time for a total cost of $4,600.32... and otherwise complies with this agreement, then [she] will acquire ownership of the rented property. At any time after [the Debtor] has made the first rental payment, [the Debtor] may aquire [sic] ownership of the rented property by tendering 60% of the difference between the total of scheduled payments and the total amount paid on the account….

Movant's Ex. A. ¶¶ D. – F.

On February 7, 2017, the Debtor filed a Chapter 13 Petition. Pet. (Doc. No. 1). The Debtor also filed a Chapter 13 Plan (the "Plan") on the same day. Chapter 13 Plan (Doc No. 2). The Plan contained a provision for payment to Premier Portable Buildings to satisfy a claim secured by an "8 x 12 Portable Utility Building." *See Id.* ¶ (e). In accordance with the procedures of this Court, the Bankruptcy Notification Center served the plan on all creditors on the creditor matrix created by the Debtor. Notice of Service of Plan (Doc. No. 9). Among other creditors served, the Plan was sent to Premier Portable Buildings at 120 Brett Chase Suite C, Paducah, Kentucky 42003-5766. *Id.* No interested party opposed confirmation and on May 11, 2017 the Court confirmed the Plan as originally filed. Order Confirming Chapter 13 Plan (Doc. No. 12).

## CONCULSIONS OF LAW

Almost one year after confirmation of the plan, the Movant filed the Motion. The Movant argues that it is entitled to relief from the Automatic Stay because the contract between it and the Debtor was a lease. Because the Debtor's plan did not provide for the assumption of the Agreement, it is presumed the lease is rejected. *See* 11 U.S.C. §§ 365(d)(2), 1322(b)(7). Rejection of a lease results in abandonment and removes the lease from the bankruptcy estate. *In re Rodall*, 165 B.R. 506, 508 (Bankr. M.D. Fla. 1994). Such consequences create cause for granting the Movant relief from the automatic stay, as the Movant's interest in the leased

3

property is no longer adequately protected by the creation of a bankruptcy estate and by payments through the Plan.

Before addressing whether the agreement creates a lease or a security agreement, the Court must address two threshold issues. First, the Court must determine whether the confirmation of the Plan binds the Movant. Second, the Court must determine which state's law governs the interpretation of the Agreement. After addressing these issues, the Court addresses whether the agreement creates a lease or a security interest.

### A. *The Plan's Confirmation Does not Prohibit the Movant from Seeking Relief from the Automatic Stay*

In general, the confirmation of a Chapter 13 plan binds all parties to the provisions contained within the plan. 11 U.S.C. § 1327; *see also*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). The *res judicata* effect of the plan's confirmation prevents a creditor from later asserting the confirmed plan did not correctly treat its claim, including a challenge regarding whether the agreement between the parties was a lease or a security interest. *See, e.g.*, *In re Durham*, 260 B.R. 383, 387 (Bankr. S.C. 2001); *HPSC, Inc. Wakefield (in re Wakefield)*, 217 B.R. 967 (Bankr. M.D. Ga. 1998).

A creditor is only bound to the terms of the confirmed plan, however, when the creditor has notice of its proposed treatment in the plan. *In re Calvert*, 907 F.2d 1069, 1070 (11th Cir. 1990) (holding confirmation did not prevent a creditor from challenging the plan's valuation of a claim where the creditor was not on notice that the court could value the collateral at the confirmation hearing). Where a party does not have sufficient information to "alert" it of the possibility that plan's confirmation may impede its rights, the confirmation order does not bind that party. *Id.*; *see also*, *Hope v. First Family Financial Services of Georgia, Inc. (In re Harrison)*, 259 B.R. 794, 797-98 (Bankr. M.D. Ga. 2011) (holding the confirmation of a Chapter

4

13 plan did not prevent the trustee from pursuing an avoidance action not listed in the plan where the trustee had insufficient information prior to confirmation to determine whether the transaction was avoidable).

Here, the Movant received no notice of the plan's confirmation. It clearly did not have sufficient information to alert it of the possibility that the plan could alter its rights. Therefore, the confirmed plan does not prevent the creditor from demanding relief from the automatic stay.

### B. Tennessee Law Governs the Agreement

When determining which state's choice-of-law doctrine applies, Federal Courts apply the forum state's law. *Rando v. Government Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). Accordingly, this court applies Georgia law to determine which state's law governs the Agreement. When a contract contains an enforceable choice-of-law provision, Georgia courts will enforce that provision unless doing so "would be contrary to the public policy or prejudicial to the interest of th[e] state." *SC-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 428 (2008); *Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs.*, 309 Ga. App. 503, 506 (Ga. App. Ct. 2011). Here, the contract contains a choice of law provision that states Tennessee law governs the Agreement. The Debtor did not argue the choice-of-law provision is contrary to public policy. Accordingly, Tennessee law shall apply.

Notably, the Movant failed to present the foreign law. In a Federal Court, however, this failure is less fatal to the movant's case. First, unlike Georgia's Civil Practice Act, Federal Rule of Civil Procedure 44.1[2] only requires notice of reliance on foreign law when the law originates from another country. *Compare* Fed. R. Civ. Pro. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.") *with* O.C.G.A. 9-

---

[2] Made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017.

5

11-43(c) ("A party who intends to raise an issue concerning the law of another state or of a foreign country shall give notice in his pleadings or other reasonable written notice.")  Second, a federal court may take judicial notice of the laws of any state, regardless of state courts' inability to do so.  *Old Hickory Products Co., Ltd. v. Hickory Specialties, Inc.*, 366 F. Supp. 913, 916 (N.D. Ga. 1973).  So while the Movant did not notice the parities of his intent to rely on Tennessee law nor did it adequately cite appropriate authority establishing the law of that state,[3] the Court will take judicial notice of the laws of Tennessee.

### C. *The Agreement is a Rental-Purchase Agreement not a Security Interest*

Tennessee, like Georgia and the majority of other states, has adopted the Uniform Commercial Code (the "UCC"). *See* Tenn. Code. Ann. § 47-1-101.  Section 1-203 of the UCC, codified in Tenn. Code Ann. § 47-1-203, governs whether an agreement between parties is a "true-lease" or a security interest; it provides:

> (a) Whether a transaction in the form of a lease creates a lease or a security interest is determined by the facts of each case.
> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee; and:
>> (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
>> (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>> (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement….

---

[3] The Movant did cite to 2007 case issued by Judge Walker, *In re Bell* (07-50003-JDW (Bankr. M.D. Ga. May 15, 2007)), which cited Tennessee law as it existed in 2007. Since that time, however, the law in the state has changed.

Other applicable Tennessee law also defines the Agreement and directs the Court to make a specific interpretation. The Tennessee Rental-Purchase Agreement Act, Tenn. Code Ann. §§ 47-18-601--614, defines a "rental-purchase agreement" as an agreement:

> for the use of personal property by a natural person primarily for personal, family, or household purposes, for an initial period of four (4) months or less (whether or not there is any obligation beyond the initial period) that is automatically renewable with each payment and that permits the consumer to become the owner of the property.

*Id.* § 47-18-603(7). Meeting the requirements of a rental-purchase agreement creates favorable designation under Tennessee law. The act states that a rental-purchase agreement "shall not be construed to be… [a] 'security interest' as defined in [UCC Sec. 1-203]." Ten Code Ann. § 47-18-603(7)(F).

Here, the evidence clearly establishes that the Agreement between the Debtor and the Movant was a "rental-purchase agreement" under Tennessee law. The Debtor's testimony establishes that the Debtor has always used the shed to store household items. The lease duration is less than four months and the agreement allows the Debtor to become the owner of the storage shed. Accordingly, the Agreement is designated a "rental-purchase agreement" and Tennessee law prohibits the Court from characterizing it as a security interest. With such a designation, the Court does not need to apply the test set forth in UCC § 1-203.

As a final note, though Tennessee's Rental-Purchase Agreement Act explicitly exempts the Agreement from the application of § 1-203, the Agreement would not otherwise be interpreted as a security interest. Section 1-203's test requires the Court to consider the term of the lease and whether the lessee is bound to renew the lease. Here, the term of the lease, one (1) month, is not greater than the remaining economic life of the storage shed. Further, the Debtor is not obligated to renew the lease. She may discontinue the lease at any time without breaching

the agreement. Therefore, even if this court were to interpret the agreement under Georgia law,[4] it would come to the same conclusion. *See Central Rents v. Johnson (In re Johnson)*, 203 B.R. 498, 503 (Bankr. S.D. Ga. 1996) (finding that a month to month "rent-to-own" contract was not a security interest under Georgia law because the debtor could cancel the lease at any time and because the lease's original term was not greater than the remaining life of the rented items).

## CONCLUSION

By application of Tennessee law, the Court determines that the Agreement between the Movant and the Debtor is a lease, not a security interest.  Because the Debtor failed to timely assume the lease, it is deemed rejected.  The rejection of a lease creates cause for relief from the automatic stay of 11 U.S.C. § 362. The Court will issue an order consistent with this memorandum opinion.

**-End of Document-**

---

[4] Georgia's "Lease-purchase Agreement Act" is dissimilar to Tennessee's Rental-Purchase Agreement Act. Georgia's act--though defining a lease-purchase agreement similarly—does not exempt lease-purchase agreements from being construed as a security interest. *Compare* O.C.G.A. § 10-1-681 *with* Tenn. Code Ann. § 47-18-603.